IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| T. KIMBERLY WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-21-2076 |
| HELENA DUPONT WRIGHT, et al., | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 21). Currently pending is defendants' Joint Motion to Dismiss ("Joint Motion to Dismiss") (ECF No. 13), plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition") (ECF No. 24), defendants' Reply Memorandum in Support of Defendants' Joint Motion to Dismiss ("Reply") (ECF No. 27), defendants' Supplemental Memorandum in Support of Defendants' Joint Motion to Dismiss (ECF No. 29), and plaintiff's Supplemental Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 30). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendants' Joint Motion to Dismiss (ECF No. 13) is denied.

I.  **BACKGROUND**

Plaintiff T. Kimberly Williams ("plaintiff" or "Ms. Williams") asserts a retaliation claim pursuant to Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, against defendants Helena duPont Wright ("Mrs. Wright") and Lucy Dunne

("Mrs. Dunne") (collectively "defendants").[1]  (ECF No. 1 at 1).  In 1947, Mrs. Wright's grandmother, Mary Chichester duPont, created a trust (the "Trust") to provide pension benefits for qualifying individuals employed by Mary Chichester duPont's grandchildren.  (Id. ¶ 11). Plaintiff, who worked as Mrs. Wright's personal accountant and assistant from approximately November 2000 until her termination in August 2018 (ECF No. 1-1 ¶ 4), claims that she qualifies for the pension benefits provided in the Trust (ECF No. 1 ¶ 11).

On February 4, 2016, Mrs. Wright and her cousin, James Mills ("Mr. Mills"), filed suit in this court (the "ERISA lawsuit") against the trustees, administrators, and fiduciaries of the Trust, arguing that the Trust is governed by ERISA, and that the Trust had not been operated in compliance with ERISA.[2]  (Id. ¶ 13).  In December 2016, Ms. Williams and an employee of Mr. Mills were added as plaintiffs in the ERISA lawsuit, and the defendants in that case subsequently filed counterclaims against Mrs. Wright and Mr. Mills.  (Id.)  The ERISA lawsuit was transferred to the United States District Court for the District of Delaware on March 17, 2017.  (Id. ¶ 14).

Until November 2018, all four plaintiffs in the ERISA lawsuit had been represented by joint counsel.  (Id. ¶ 16).  According to Ms. Williams, however, Mrs. Wright "had a change of heart with respect to the [ERISA] lawsuit" and, in November 2018, new counsel entered her appearance on behalf of Mrs. Wright in the ERISA lawsuit.  (Id. ¶¶ 15-16).  Plaintiff alleges that in July 2019, Mrs. Wright indicated that she intended to defeat plaintiff's claim for benefits in the ERISA lawsuit "[i]n contradiction of her former role as an active plaintiff" in that case.  (Id. ¶

---

[1] Mrs. Dunne is Mrs. Wright's daughter.  (ECF No. 1 ¶ 10).  According to plaintiff, Mrs. Dunne "purported to act on behalf of her mother . . . with respect to some or all of the discriminatory and retaliatory actions" alleged in the Complaint.  (Id.)  Plaintiff also alleges that Mrs. Dunne began to manage her mother's affairs starting in 2018.  (Id. ¶ 15).

[2] Plaintiffs in the ERISA lawsuit have since amended their complaint twice.  (ECF No. 1 ¶ 13).

17).[3] As a result, plaintiff alleges that she obtained new counsel to represent her in the ERISA lawsuit and, in May 2020, she advised the parties in the ERISA lawsuit, including Mrs. Wright, that she intended to file motions seeking to realign Mrs. Wright as a defendant in that case with funding obligations to the Trust and to restate the case as a putative class action. (Id. ¶¶ 18-19). On June 5, 2020, plaintiff claims that she met and conferred with the parties in the ERISA lawsuit "to confirm that she would be filing these motions."[4] (Id. ¶ 19).

On that same day, Mrs. Wright brought suit in the Circuit Court for Cecil County, Maryland (the "state court lawsuit"), against Ms. Williams and the attorneys who initially represented the plaintiffs in the ERISA lawsuit as joint counsel, including Stephen Rosenberg and the Wagner Law Group. (See ECF No. 1-1). The state court lawsuit alleged six counts, including (1) breach of contract, (2) unjust enrichment, (3) right of contribution, (4) breach of confidential relationship/fiduciary duty, (5) breach of professional duty as an accountant, and (6) breach of duty of loyalty. (Id. at 14-21). Counts II, III, IV, and V were alleged as to Ms.

---

[3] By that point, the Delaware court had already granted summary judgment to plaintiffs as to Count I of the operative complaint in the ERISA lawsuit, holding that the Trust at issue in that case was governed by ERISA. (ECF No. 1 ¶ 14).

[4] A bench trial was held in the ERISA lawsuit from April 19, 2022, through April 22, 2022. (ECF Nos. 29 at 1, 30 at 2). The parties subsequently completed post-trial briefing on May 13, 2022, and a ruling in that case has not yet been issued. (ECF Nos. 29 at 2, 30 at 2). Relatedly, defendants contend that plaintiff's Section 510 claim is premature and should be dismissed or, alternatively, stayed pending all appeals in the ERISA lawsuit because if an appellate court holds that the Trust is not governed by ERISA, "then there would be no legal basis to allege a Section 510" claim. (ECF No. 27 at 8). Defendants, however, provide no authority to support their position. Moreover, the court will not dismiss or stay this case based on the hypothetical that an appeal regarding the issue of ERISA's application to the Trust may, at some point, be taken. Accordingly, there is no basis to dismiss or stay this case on the ground that plaintiff's Section 510 claim is premature.

3

Williams only. (Id. at 15-19).[5] Notably, Mrs. Wright alleged that Ms. Williams, as her personal accountant, caused Mrs. Wright, who has been legally blind since approximately 2009 (ECF No. 13-1 at 6), to spend more than $800,000 in legal fees to fund the joint representation of the four plaintiffs in the ERISA lawsuit without Mrs. Wright's knowledge or consent (ECF No. 1 ¶ 22).

On August 16, 2021, Ms. Williams brought suit in this court against Mrs. Wright and Mrs. Dunne on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Id. ¶ 6). Specifically, Ms. Williams alleges that Mrs. Wright—and Mrs. Dunne, acting on behalf of Mrs. Wright—filed the state court lawsuit in retaliation for plaintiff's participation in the ERISA lawsuit, in violation of Section 510 of ERISA. (Id. ¶ 30). Plaintiff seeks declaratory, injunctive, and other equitable relief. (Id. at 11-12). Defendants move to dismiss plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6).[6] (ECF No. 13 at 1).

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a

---

[5] On October 8, 2021, Mrs. Wright voluntarily dismissed Counts I, II, III, IV, and VI in the state court lawsuit. (ECF No. 29-1). The sole remaining claim in that case is Count V, which alleges that Ms. Williams breached her professional duty as an accountant by failing to properly file annual income tax returns and make required tax payments on behalf of Mrs. Wright. (ECF No. 1-1 at 19-21). As of the date of this Memorandum Opinion, the state court lawsuit remains pending and is currently in the discovery phase. (ECF Nos. 29 at 3, 30 at 3).

[6] While defendants argue that plaintiff's Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6), defendants do not explain in their motion papers why the Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. In addition, defendants frame their Joint Motion to Dismiss in terms of plaintiff's failure "to state a claim for which relief can be granted," clearly implicating Rule 12(b)(6). (ECF No. 13-1 at 5, 11-12). Accordingly, the court will address defendants' arguments under the standard for Rule 12(b)(6).

motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." Id. at 244. Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted). A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439. Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### III.  DISCUSSION

Defendants move to dismiss plaintiff's Complaint for failure to state a claim under Section 510 of ERISA (ECF No. 13-1 at 11). Section 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [(1)] for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or [(2)] for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . It shall [also] be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . .

29 U.S.C. § 1140.

Here, plaintiff alleges a single count, arguing that defendants have violated Section 510 by "discriminating and retaliating" against plaintiff for "exercising her rights as an ERISA Plan

participant through her participation in the [ERISA lawsuit] . . . for the purpose of interfering with her attainment of benefits under the Plan . . . [and] because [plaintiff] has testified or is about to testify in the ERISA lawsuit in Delaware."[7]  (ECF No. 1 at 10-11).

As a threshold matter, defendants argue that Section 510 does not apply in this case. Specifically, defendants contend that Mrs. Wright's payment of legal fees in the ERISA lawsuit constituted a "gratuitous employee benefit" and, based on Stiltner v. Berretta USA Corp., 74 F.3d 1473 (4th Cir. 1996), Section 510 does not apply to the revocation of a gratuitous benefit. (ECF No. 13-1 at 15-16).  It is inherently inconsistent, however, for defendants to argue on the one hand that Mrs. Wright "unwittingly" paid all legal fees in the ERISA lawsuit yet on the other hand also claim that payment of those same fees constituted a gratuitous employee benefit.  In addition, while Stiltner involved the *prospective* reduction of a benefit, here, as plaintiff notes (ECF No. 24 at 21-22), the state court lawsuit constitutes an attempt by defendants to *retroactively* recoup legal fees already paid by Mrs. Wright.  Accordingly, in light of the internal contradiction of defendants' argument and because the facts of Stiltner are distinguishable from those in this case, dismissal is not warranted on the basis that the state court lawsuit was a revocation of a gratuitous benefit.

In cases involving a Section 510 claim brought by a plaintiff who was employed by the defendant at the time of the alleged retaliation, this court has required the plaintiff at the motion to dismiss stage to allege "1) that there was an adverse employment action, 2) that such action was taken with the purpose of interference with benefits, 3) and that [the plaintiff] was otherwise eligible for the benefit."  Frankenstein v. Host Int'l, Inc., No. 20-1100-PJM, 2021 WL 826378, at

---

[7] In her Opposition, plaintiff elaborates on her Complaint and asserts that she brings her case pursuant to the "exercise" clause and the "testify" clause of Section 510.  (ECF No. 24 at 13-14).

\*3 (D. Md. March 4, 2021) (citing Obazee v. Wells Fargo Advisors, LLC, No. 10-cv-215, 2010 WL 3522091, at \*3 (E.D. Va. Sept. 3, 2010)).  In Eweka v. Hartford Life and Acc. Ins. Co., 955 F. Supp. 2d 556 (E.D. Va. 2013), however, the court applied a different pleading standard when the plaintiff brought a Section 510 claim for the alleged interference of ERISA benefits by a party who was not the plaintiff's employer.  In that case, the court held that to survive a motion to dismiss a Section 510 claim, a plaintiff must "allege conduct on the part of the defendant that is actually proscribed by ERISA's interference statute . . . [a]nd in doing so, a plaintiff must satisfy the pleading requirements of Iqbal/Twombly."  Eweka, 955 F. Supp. 2d at 563.

In this case, neither defendant was plaintiff's employer at the time Mrs. Wright filed the allegedly retaliatory state court lawsuit.  While plaintiff was employed by Mrs. Wright from approximately November 2000 to August 2018 (ECF No. 1-1 ¶ 4), Mrs. Wright did not file the state court lawsuit until June 5, 2020 (id. at 1), when plaintiff was no longer employed by Mrs. Wright.[8]  To survive defendants' motion to dismiss, therefore, plaintiff must allege conduct that is "actually proscribed" by Section 510 and "satisfy the pleading requirements of Iqbal/Twombly."  Eweka, 955 F. Supp. 2d at 563-64 (noting that plaintiff's allegations must

---

[8] Defendants argue that plaintiff was required to allege that an "employment relationship was affected in a substantial way" and that plaintiff failed to do so because she was not employed by Mrs. Wright at the time the state court lawsuit was filed.  (ECF No. 13-1 at 18).  The Fourth Circuit, however, has held that relief under Section 510 is not limited to plaintiffs who only allege illegal conduct by employers.  Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 421 (4th Cir. 1993) ("In light of the plain language of [Section 510], we cannot agree with the defendants that Congress intended to limit those who could violate [Section 510] to employers.").  Defendants nevertheless maintain that while Custer "clarified that the term 'person' under Section 510 can apply to 'persons' other than employers[,] it did not eliminate the requirement under Section 510[] that the acts complained of must affect the [plaintiff's] benefits or rights under ERISA."  (ECF No. 27 at 7).  Here, however, plaintiff has clearly alleged conduct (i.e., defendants' filing of the allegedly retaliatory state court lawsuit) affecting her rights under ERISA (i.e., the right to participate in the ERISA lawsuit and sue for benefits).  (ECF No. 1 ¶ 30).

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and which "must be enough to raise a right to relief above the speculative level") (citations and internal quotation marks omitted).[9]

In this case, plaintiff alleges conduct that is "actually proscribed" by Section 510.  See Owens v. Storehouse, Inc., 984, F.2d 394, 398 (11th Cir. 1993) (noting that Section 510 prohibits discrimination "designed either to retaliate for the exercise of a right [under ERISA] or to interfere with the attainment of an entitled right").  Specifically, plaintiff alleges sufficient facts to state a plausible claim that defendants discriminated against her by filing the state court lawsuit in retaliation for plaintiff's participation in the ERISA lawsuit.  For example, plaintiff asserts that "the timing and content of the [state court lawsuit] make clear that the purpose of the suit against Ms. Williams is to discriminate and retaliate against her for exercising her rights under ERISA in pursuing claims against [Mrs.] Wright, and in seeking to protect the interests of other Plan participants and beneficiaries."  (ECF No. 1 ¶ 20).

With respect to the timing of the state court lawsuit, plaintiff notes that Mrs. Wright—or Mrs. Dunne acting on behalf of Mrs. Wright—filed the state court lawsuit on June 5, 2020, the

---

[9] Defendants cite Gavalik v. Cont'l Can Co., 812 F.2d 834, 851-52 (3rd Cir. 1987) and Taliaferro v. Assocs. Corp. of N. Am., 112 F. Supp. 2d 483, 492-93 (D.S.C. 1999), aff'd, 229 F.3d 1144 (Table) (4th Cir. 2000) for the proposition that plaintiff must also allege specific intent to state a claim under Section 510.  (ECF No. 13-1 at 12-13).  Specifically, defendants argue that plaintiff has failed to allege specific intent to interfere with the attainment of ERISA benefits.  (Id. at 13). Here, however, plaintiff alleges that defendants filed the state court lawsuit in retaliation for her participation in the ERISA lawsuit "and in an effort to try to get [plaintiff] to drop or settle that lawsuit."  (ECF No. 1 ¶ 4).  As discussed below, plaintiff's allegations and asserted factual support are sufficient at the motion to dismiss stage.  Moreover, defendants' reliance on Gavalik and Taliaferro for the proper pleading standard at the motion to dismiss stage is misplaced.  For example, Gavalik is a Third Circuit case which involved review of the liability phase of a bench trial and referred to the specific intent requirement as an evidentiary burden.  812 F.2d at 851-52. Similarly, Taliaferro involved review of a motion for summary judgment and, as plaintiff notes (ECF No. 24 at 12-13), a different factual scenario.  112 F. Supp. 2d at 487-89.

same day plaintiff met and conferred with the parties in the ERISA lawsuit to confirm that she would be filing motions in that case to name Mrs. Wright as a defendant with funding obligations to the Trust and to restate the ERISA lawsuit as a putative class action.  (Id. ¶¶ 19-20).  Defendants, however, argue that it is "inconceivable and highly improbable" that the complaint in the state court lawsuit, consisting of six counts, 25 pages, and 146 paragraphs, "could have been prepared in a few hours [on June 5, 2020] in retaliation for Williams' newly announced claims."  (ECF No. 13-1 at 10).  As plaintiff notes (ECF No. 24 at 16 n.2), however, defendants acknowledge that they were on notice of Ms. Williams' proposed motions in the ERISA lawsuit as early as May 26, 2020 (ECF Nos. 1-1 ¶ 68, 13-1 at 9).  It is not "inconceivable" or "highly improbable," therefore, that defendants could have drafted the complaint in the state court lawsuit to retaliate against plaintiff for her participation in the ERISA lawsuit, specifically because of plaintiff's stated intention to file motions adverse to Mrs. Wright in the ERISA lawsuit.

In addition, plaintiff alleges in her Complaint in this case that counsel for Mrs. Wright stated during a hearing in the ERISA lawsuit on December 18, 2020, that "she had held off filing the state lawsuit against Ms. Williams until it was clear that the ERISA lawsuit in Delaware was not going to settle."  (ECF No. 1 ¶ 24).  Plaintiff argues that Mrs. Wright's counsel's alleged admission "clarifies and underscores that the state lawsuit was improperly premised on the ERISA lawsuit in Delaware and brought as leverage against Ms. Williams to pressure her to drop or settle the [ERISA] lawsuit on favorable terms to the Plan and its participants."  (Id.)  While defendants argue that the ERISA lawsuit "is incredibly complex" and that any agreement to settle at that time would have required the consent of the four plaintiffs, four defendants, and six

third-party defendants (ECF No. 13-1 at 16-17), the court in this case, at the motion to dismiss stage, must draw all reasonable factual inferences in plaintiff's favor. See Edwards, 178 F.3d at 244. The allegations noted above, therefore, are sufficient to state a plausible claim for relief. Eweka, 955 F. Supp. 2d at 563-64.

With respect to the content of the state court lawsuit, plaintiff claims that Mrs. Wright's allegations in the state court lawsuit "are expressly premised on Ms. Williams' acts in participating in the Delaware ERISA case." (ECF No. 1 ¶ 21). In support of her assertion, plaintiff notes that the state court complaint takes issue with Ms. Williams having been added to the ERISA lawsuit as a plaintiff and asserts that plaintiff sought a ruling in the ERISA lawsuit that the Trust is governed by ERISA because plaintiff "knew she would benefit from such a result by obtaining pension benefits." (Id.) Specifically, plaintiff cites to paragraphs 33 and 46-53 of the state court complaint to support her argument that the content of the state court lawsuit supports a reasonable inference that defendants filed that lawsuit in retaliation for plaintiff's participation in the ERISA lawsuit. (Id.) Notably, however, defendants do not address these specific allegations in their motion papers or otherwise explain why the paragraphs of the state court complaint cited by plaintiff do not support a reasonable inference of retaliation. Instead, defendants maintain that the state court complaint focuses on issues related to employee malfeasance and that under plaintiff's theory, "no person could ever seek damages against a former employee if there is *any* reference to an ERISA Plan." (ECF No. 27 at 3-4) (emphasis in original). While it is far from clear whether plaintiff's claim under Section 510 will be viable on summary judgment, the court concludes—based on the specific allegations asserted by plaintiff in this case, as well as the timing of the filing of the state court complaint—that plaintiff has

alleged sufficient facts at this stage to state a plausible claim of retaliation under Section 510.[10] Accordingly, defendants' Joint Motion to Dismiss is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' Joint Motion to Dismiss (ECF No. 13) is DENIED. A separate order will be issued.

July 19, 2022

/s/
Beth P. Gesner
Chief United States Magistrate Judge

---

[10] Defendants further contend that plaintiff's claims should be dismissed as to Mrs. Dunne because "[n]owhere in the Complaint does Plaintiff allege a specific act taken by *Mrs. Dunne* in retaliation against Plaintiff affecting Plaintiff's rights or benefits under ERISA." (ECF No. 27 at 7) (emphasis in original). Defendants maintain, without any supporting case law, that the "mere conclusory allegations that Mrs. Dunne is Mrs. Wright's daughter and 'began to take control of Mrs. Wright's affairs in 2018 cannot provide a reasonable inference in support [of] a claim for retaliation under ERISA Section 510 based on the filing of the [state court lawsuit]." (Id.) The court, however, is not persuaded by defendants' arguments. Contrary to defendants' position, it is reasonable to infer that Mrs. Dunne, who allegedly controlled Mrs. Wright's affairs starting sometime in 2018, played some role in the filing of the allegedly retaliatory state court lawsuit in June 2020. Accordingly, dismissal is not warranted as to Mrs. Dunne.

11